## BENDER v. ADDAMS et.

Ohio Appeal, 8th Dist., Cuyahoga Co.

Syllabus by Editorial Staff.

951. PRINCIPAL AND AGENT—456. Employer and Employe.

State prohibition commissioner not liable, under doctrine of respondeat superior, for acts of prohibition inspector.

661. INTOXICATING LIQUOR—1071. Search and Seizure.

1. Mere possession of liquor, without "trafficking," does not deprive private residence of immunity from raid.

2. Officer, who searches private residence without investigation and reasonable ground for belief of violation, does so at his peril, and is liable in damages.

3. Owner of residence, who permits search without objection, does not waive rights.

Error to Common Pleas.

Judgment reversed.

G. O. Farquharson, Cleveland, for Bender.

Geo. C. Dissette, John A. Elden, and Simmons, DeWitt & Vilas, Cleveland, for Addams et.

### STATEMENT OF FACTS.

On the strength of an anonymous letter to one Boyer, intimating that liquor was to be found in a residence located at 13038 Cedar Road, Cleveland Heights, W. J. Patrick, a State Prohibition Inspector filed an affidavit and had issued to himself a search warrant, without naming any defendant, authorizing him to search this place named in the anonymous letter. Thereupon, Patrick, together with John Connors, a special policeman of East Cleveland, engaged as a dry raider, searched the house from top to bottom and found no liquor whatever of any kind or description, and then left.

The house proved to be the residence of State Senator George Bender, who later brought an action for damages against Stanton Addams, Justice of the Peace for East Cleveland Township, B. F. McDonald, the State Prohibition Commissioner, Patrick, Connors, and Boyer.

The warrant was issued and the search made without any effort having been made by Patrick, Connors, Boyer or any of them to investigate to see what this place was, or who lived there. They apparently took the anonymous letter at face value, and made no further investigation.

On the trial of the action, on motion, a judgment was rendered by the court in favor of McDonald, discharging him from the case, and that is one of the grounds of error that is prosecuted.

Addams was let out of the case through a demurrer filed in his behalf prior to the time of the trial, and as error is not prosecuted against that release, Addams is not before us.

Subsequently Boyer died, and there is no claim made against him. All of these parties were either let out before or during the trial.

The case against Patrick and Connors was submitted to a jury and a verdict was returned against Patrick, State Prohibition Inspector, in the sum of $25,000, and the jury, under the charge of the court, which is alleged as one of the errors, found in favor of Connors, special policeman.

### OPINION OF COURT.

The following is taken, verbatim, from the opinion.

VICKERY, J.

Now the theory of the case was that, inasmuch as this was a "bona fide" private residence, the issuance of a search warrant was illegal, and that it gave no right to Patrick and Connors to enter upon the premises; that they were trespassers and that they were liable for whatever damages might have occurred. In any event they were liable for nominal damages.

There is no question, in the instant case, even under the Miller law, to construe it, as it has been argued, that this Bender residence remained a private residence and a "bona fide" private residence, because there was no liquor of any kind, contraband or bond liquor, that was found on the premises. So far as this case is concerned, the persons who entered the premises were trespassers.

Now the theory of holding McDonald was on the ground that there existed the relationship of principal and agent between him and Patrick, and that the doctrine of "respondent superior" applied. In other words, that Patrick was not an officer, that he was simply the agent of McDonald, State Prohibition Commissioner, and if Patrick was responsible as agent, the principal would likewise be liable. We do not think that the doctrine of "respondeat superior" applies in this case.

Now, as already stated, both from subsequent events and what should have appeared before anything was done, the home of Senator Bender was a "bona fide" private residence. That being so, can the defendants escape responsibility by showing that they had a search warrant?

Now it is claimed that the Miller law changed the law heretofore existing, so that if one had a search warrant to search what would otherwise be a "bona fide" private residence, and they found liquor, or, liquor that was illegally manufactured or obtained, then the house would cease to retain its character as a private residence and those who held the search warrant would be immune from damages by reason of a search under such a warrant.

It would be interesting to read this section of the statute in conjunction with others. The section, under discussion, of the Miller law, seems to me to refer to the trafficking in intoxicating liquors: "No place shall be regarded as a 'bona fide' private residence under the laws prohibiting liquor traffic, wherein liquors are possessed or have been illegally manufactured or obtained." It will be seen that this section refers to traffic in intoxicating liquor, and the possession of liquor, illegally obtained or otherwise, is only to be taken in connection with the former part of this phrase, "trafficking in intoxicating liquors."

Now this trafficking in liquors, as defined in this statute, does not very materially change the ordinary definition from a trafficking in intoxicating liquors. It means the buying, selling, enabling, procuring, or aiding to procure liquors in which there is to be a trafficking in, and to possess them for that purpose.

Section 6212-14, paragraph 2, reads as follows:

"The term 'given away' and the term 'possess' shall not apply to intoxicating liquor in a bona fide private dwelling."

So from these authorities, under the Miller law, the character of a "bona fide" private residence can only be changed so it is not immune from search, by doing something which amounts to a trafficking in liquors; the mere possession of liquor, no matter when manufactured, does not change the character of the home. It depends upon the use to which the house is put.

We are not saying that before you could change the character of a private residence into a place for which a search warrant might be issued, it would be necessary, in all cases, to show by direct evidence that there was a sale of liquor. The quantity of liquor that was procured, how often it was procured, all of those things should be taken into consideration, as bearing upon the question as to whether or not there was a trafficking in intoxicating liquors, and even though they might

not show, as a matter of fact, that there was a sale, yet circumstances might be sufficient to taint that house, and that house would cease to be a "bona fide" residence. Even if the officers had found a bottle of liquor, unless it would have been under such circumstances that a trafficking might be presumed, the mere possessing of a bottle of liquor would not, of itself, change the character of the home into that of a place that would not be immune from search.

Let us make this proposition: That, under the law, in the same Miller act, is this provision: "Providing that nothing in this act shall be construed to permit any person to enter or search, with or without a warrant, a bona fide private residence as herein defined." Now this statute is simply in accordance with the general law that a man's home or his house is his castle, and it is immune. That being so, the proposition that we lay down is that a house, being a "bona fide" private residence, no officers of the law seeking to enforce the dry law, have a right, either with or without a warrant, to enter and search a "bona fide" private house. If they do so, they do so at their peril, and are trespassers, ab initio, and are liable for at least nominal damages.

We are of the opinion, in view of the positive prohibition of the statute against the issuance of a search warrant to search a "bona fide" private residence, that before an officer is authorized to swear to an affidavit upon which a search warrant is to be issued, he must first investigate and have reasonable grounds to believe that which appears to be a "bona fide" private residence is in fact not a "bona fide" private residence.

Taking these propositions in connection with the charge of the court: It was, in effect, that if Connors did not know of the situation and circumstances, and he went in there at the request of Patrick, who had a search warrant, he would not be responsible, and the jury must have believed and relied upon this statement and followed the instructions of the court. Now every man, especially an officer, who seeks to enforce law, must know the law, and Connors is presumed to know that, under no circumstances, with or without a search warrant, could he search the "bona fide" private house of Bender or anybody else. That being so, when he entered upon these premises he was guilty of a trespass and the court was wrong in his charge to the jury upon which this verdict was based, because the evidence is undisputed that Connors did go in this house with Patrick, and they searched this house from cellar to garret. It is said they did it with the consent of Senator Bender. Well, Senator Bender did not want to create a disturbance by fighting with officers, and so he did what most men would do, make the best of a bad situation and, smilingly perhaps, permitted them to search the house; but that does not show that they were invited into the house, and that he waived any of his rights. It simply shows that he did not obstruct the officers in what they regarded as the performance of their duties. But that does not excuse the officers.

We think that the searching a "bona fide" private house, with or without a warrant, is a trespass, and a violation of the right of the

party who owns the house and who was in possession when it was so searched, and that the plaintiff would be entitled to recover at least nominal damages.

We think, therefore, that the court was wrong in his charge, and it was such prejudicial error that it resulted in a wrong judgment and for that reason the judgment will be reversed and the cause remanded to the Common Pleas Court to be retried.

(Sullivan, PJ. and Levine, J., concur.)